**DIEFENTHALER, Appellant,**

v.

**DIEFENTHALER, Appellee.**

[Cite as *Diefenthaler v. Diefenthaler* (1989), 63 Ohio App.3d 845.]

Court of Appeals of Ohio,
Ottawa County.

No. OT–88–44.

Decided Aug. 25, 1989.

*Mark E. Mulligan,* for appellant.
*David M. Schnorf,* for appellee.

ABOOD, Judge.

This is an appeal from a judgment of the Ottawa County Court of Common Pleas, Domestic Relations Division, granting both parties a decree of divorce and ordering a division of the marital property.

Plaintiff-appellant, Nadia K. Diefenthaler, has filed a timely notice of appeal setting forth the following assignment of error:

"The trial court erred when it abused its discretion by awarding appellee an excessive share of the marital assets and also by awarding no alimony to appellant."

The undisputed facts that are relevant to this appeal are as follows: The parties were married on or about April 19, 1960, in Greensprings, Ohio. Three children were born to the marriage, but one child died shortly after birth. While the surviving daughters are both emancipated, one resides with appellee who is helping her through nursing school. On July 2, 1987, appellant filed her complaint for divorce alleging that appellee was guilty of extreme cruelty and gross neglect of duty, and, on August 5, 1987, appellee filed his answer and counterclaim for divorce alleging that appellant was guilty of extreme cruelty and gross neglect of duty. On June 9, 1988, appellee amended his answer and counterclaim, alleging that he and appellant had lived separate and apart since May 4, 1987. On June 16, 1988, a final hearing was held and testimony was taken. At the hearing the following pertinent evidence was introduced: The parties were married for approximately twenty-eight years, having married immediately after their graduation from college. Appellant is fifty-one years old and has a bachelor's and a master's degree in education and is certified to teach special education grades kindergarten through twelve. Although appellant did some teaching off and on during the marriage, instead

of pursuing a permanent teaching career, she stayed at home with the primary responsibility of caring for her husband and raising and caring for their two children. At the time of the hearing, appellant was employed by the Toledo Board of Education as a tutor to four students at a rate of $12.70 an hour. She tutored approximately twenty to twenty-one hours per week during the 1987–1988 school year, grossing approximately $5,805 for the year. At the time of the hearing, appellant was uncertain if her tutoring position would be available for the 1988–1989 school year. Appellant also testified that her monthly expenses average approximately $972. As to retirement benefits, appellant stated that she and appellee had cashed in her contributions when she quit teaching to stay at home with the children; however, if she continues tutoring for an eighteen-month period, she will be eligible to participate in the State Teachers Retirement System and can repurchase the previous time that she cashed out. No further evidence was presented regarding her potential retirement rights. Dr. Frank Bock, a psychologist, testified at the hearing that appellant was diagnosed in 1983 or 1984 as a manic depressive, is currently under his care and is taking prescribed medication for her condition. Dr. Bock testified that in his opinion, her emotional condition may adversely affect her ability to teach full-time in a classroom setting due to the pressures and stress that such a position would generate. Bock stated further that appellant did seem to be handling her current tutoring position fairly well, and perhaps in time could undertake more responsibility; however, he did not recommend that she do so right away.

Appellee is also fifty-one years old, seemingly active, and in fair health with some past problems with one eye and arrhythmia. Appellee has a bachelor's and master's degree in education and was the primary wage earner during the marriage, beginning his teaching career immediately upon receiving his bachelor's degree. At the time of the hearing appellee had been employed by the Toledo Public Schools for twenty-nine years as a teacher, principal and, currently, a visiting teacher. Appellee's gross earnings were $37,000 for 1987 and estimated to be $39,000 for 1988. Appellee testified that his monthly expenses averaged about $2,164 which included voluntary support to the daughter currently residing with him. Appellee is fully vested in his pension plan with the State Retirement Fund and will be able to retire with benefits upon completion of thirty years of service. At the final hearing the deposition of Richard Zimmerman, the Assistant Executive Director of Member Benefits Division of the State Teachers Retirement System, a public pension fund for Ohio teachers, was introduced into evidence. Zimmerman testified that, based upon twenty-eight years of contributing service and total accumulated contributions of $40,051.81 as computed through the 1987 school year, appellee's estimated retirement benefit, if taken as a single life annuity, would be

approximately $1,810 per month or $21,672 annually. Exhibit No. 2 in Zimmerman's deposition sets forth the estimated benefit amounts and also indicates that the reserve amount in the plan for appellee's benefits is $293,697.84 as of June 2, 1988. Zimmerman also testified that the accumulated contributions of $40,051.81 could be taken out by appellee, but only if he quit his employment and took no other position that contributed to any public retirement system in Ohio. Zimmerman testified further that the terms of the pension plan did not provide for a lump sum distribution of the retirement benefits; however, an employee could elect a joint and survivor annuity and direct that the survivorship benefits be paid to a qualified dependent or spouse, which may include a former spouse.

Also testifying at the final hearing was Edmund Schafer, a certified public accountant. Schafer, using the information previously provided him by appellee's counsel regarding appellee's total years of service, the amount of accumulated contributions to the pension plan and the estimated benefit amount of $1,806, calculated the present value of appellee's future retirement benefits, using a growth rate of six percent to eight percent for a range of value and a hypothetical retirement date of April 1988, which would coincide with thirty years of service, to be in a range of $235,427.77 to $282,688.58. Schafer also testified, however, that if appellee waived his retirement benefits, quit his position and met all the other conditions required by the plan for such an action, he would only be entitled to the amount of his accumulated contributions.

Evidence was also submitted that during the pendency of the divorce action, the parties sold their house to one of their daughters and her husband with the proceeds of the sale amounting to approximately $46,000.

Subsequent to the final hearing, both parties submitted written arguments and on August 5, 1988, the trial court rendered its decision finding that the parties had lived separate and apart for more than one year without cohabitation and awarding them a decree of divorce on that ground. The trial court then determined the marital assets to be as follows: Proceeds from the sale of the marital residence in the amount of $46,025, two automobiles titled in appellee's name valued at $500 each, a joint account at the Toledo Teachers Credit Union containing $500, a checking account in defendant's name containing $500, an individual retirement account in appellee's name of $15,129 and an individual retirement account in appellant's name of $4,327, an automobile in appellant's name, a checking account with $250 and a savings account with $1,283, both in appellant's name, miscellaneous household goods and appellee's retirement plan having a present value of approximately $235,000. The trial court then ordered the following property division: Each party was

awarded the automobile, or in appellee's case, automobiles in their possession, their respective checking and savings accounts and the household furnishings and miscellaneous personal property currently in their possession, as previously agreed upon. In addition, appellant was awarded the $500 in the credit union account, the $4,327 in her individual retirement account, $31,025 of the proceeds from the sale of their home, an additional property settlement of $31,200 payable by appellee at the rate of $100 per week or at appellee's option payable in full at an earlier date and all rights to her own retirement benefits. Appellee was awarded his individual retirement account of $15,129, $15,000 of the remaining proceeds from the sale of the house, and all rights to his retirement benefits. No award of sustenance alimony was made to appellant. On September 9, 1988, the judgment entry of final divorce was entered in accordance with the above decision. On October 4, 1988, appellant filed a notice of appeal from the final judgment and on October 7, 1988, appellee filed a notice of cross-appeal, which was subsequently withdrawn.

In support of her single assignment of error, appellant argues that the trial court's division of property awards her only nineteen to twenty percent of the marital assets while awarding seventy-eight to eight-one percent of the assets to appellee, that given the trial court's valuation of appellee's pension plan at $235,427 such a division is not an equitable allocation of appellee's pension rights and that the overall division of marital assets is inequitable and constitutes an abuse of discretion. Appellant also contends that the trial court abused its discretion in not awarding her sustenance alimony. Appellant requests that the case be remanded to the trial court for entry of a qualified domestic relations order ("QDRO") awarding her fifty percent of appellee's pension rights accumulated during the marriage and an award of permanent sustenance alimony as originally requested.

Appellee contends that the trial court, in formulating the property division, considered all of the relevant factors required by R.C. 3105.18 and awarded virtually all of the marital assets to appellant. Appellee asserts that the true value of his pension is $40,051.81, the amount of accumulated contributions, and not the purported value given to it by the court.

■ Upon the granting of a divorce, the trial court must determine what award of alimony, which may include an equitable division of the marital assets as well as periodic payments for sustenance and support, is appropriate. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293; *Teeter v. Teeter* (1985), 18 Ohio St.3d 76, 18 OBR 106, 479 N.E.2d 890. R.C. 3105.18(B) enumerates eleven factors that are to be considered by the trial court in determining what is an equitable property division and whether

sustenance alimony is appropriate.[1] Considering these and all other relevant factors, the trial court first formulates the division of property and thereafter determines if any award of sustenance alimony is warranted. *Teeter, supra; Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 133, 541 N.E.2d 597, 601. The trial court is given broad discretion in determining the appropriate scope of these awards based upon the particular facts and circumstances of each case, and such determination will not be disturbed by this court absent an affirmative showing that the trial court abused its discretion. *Cherry, supra; Teeter, supra.* The term "abuse of discretion" implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. A reviewing court's role is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion. *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 222, 9 OBR 529, 531, 459 N.E.2d 896, 898.

With regard to the trial court's division of the parties' marital assets, there is no requirement that it be precisely equal; rather, a potentially equal division is the starting point from which the trial court then considers the factors set forth in R.C. 3105.18(B) and all other relevant factors in formulating an equitable distribution. *Cherry, supra.* An employee spouse's retirement or pension plan, to the extent it was accumulated during the marriage, constitutes a marital asset subject to division by the court and is a factor that must be considered in determining an appropriate, equitable alimony award along with all of the other relevant factors. R.C. 3105.18(B). *Holcomb, supra; Teeter, supra.* Ohio courts have recognized several alternative methods for equitably distributing the spouses' proportionate interests in such funds within the context of the overall property division. One alternative is to withdraw the funds from the plan and apportion and distribute them at the

---

1.
"(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the following:
"(1) The relative earning abilities of the parties;
"(2) The ages, and the physical and emotional conditions of the parties;
"(3) The retirement benefits of the parties;
"(4) The expectancies and inheritances of the parties;
"(5) The duration of the marriage;
"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
"(7) The standard of living of the parties established during the marriage;
"(8) The relative extent of education of the parties;
"(9) The relative assets and liabilities of the parties;
"(10) The property brought to the marriage by either party;
"(11) The contribution of a spouse as homemaker." R.C. 3105.18(B)

time of the divorce. *Blair v. Blair* (1983), 11 Ohio App.3d 117, 11 OBR 171, 463 N.E.2d 423; *Day v. Day* (1988), 40 Ohio App.3d 155, 532 N.E.2d 201. Such an approach is not always feasible since, depending upon the number of years of contributions, it could result in the destruction of a valuable property right. Another alternative is for the trial court, based on the evidence presented, to determine the present value of the pension fund, calculate the nonemployee spouse's proportionate share and offset that amount with other marital assets, a lump sum payment or with installment payments from the employee spouse. *Blair, supra.* Of course, for this method to be feasible there must be sufficient marital assets to accomplish an equitable offset or lump sum payment. Another alternative is for the trial court to reserve jurisdiction to divide the pension fund when the benefits are withdrawn from the plan, at that time reassessing the situation to determine if the circumstances warrant modification of the initial alimony award. *Blair, supra; Day, supra.* Yet another alternative is to determine the appropriate percentage or amount of future benefits in view of the circumstances to be paid to the nonemployee spouse when the pension matures. *Day, supra.* This can be done through the use of a QDRO where appropriate. *Id.* This method is especially viable in cases where the marital assets are few beyond the pension itself and also serves to allocate any risks in future distribution between the parties and avoids destruction of the plan.

Recently, this court in *Powell v. Powell* (1989), 49 Ohio App.3d 56, 550 N.E.2d 538, recognized that all of the above alternatives are viable ones for allocating the spouses' proportionate interests in a pension fund in the formulation of an equitable division of all of the marital assets. In *Powell*, we overruled, in part, a previous holding in *Schrader v. Schrader* (Oct. 12, 1984), Lucas App. No. L–84–029, unreported, 1984 WL 14395, which restricted the trial court's choice of alternatives to those methods which achieved a present, full and final allocation of pension rights at the time of divorce, precluding future distribution of a nonemployee spouse's share unless "extraordinary circumstances" existed. In *Powell*, we found that such an absolute rule infringed upon the trial court's exercise of its discretion in determining which of the alternatives available is most appropriate in effectuating an equitable division and distribution of the pension benefits given the specific needs and means of the parties in each individual case. *Id.*, 49 Ohio App.3d at 58, 550 N.E.2d at 540.

In this case, the trial court, citing *Schrader*, rejected appellant's request for future distribution of her proportionate share of the pension payments and instead made a present, final allocation of all of the marital assets. In doing so, the trial court found that the present value of appellee's pension plan to be approximately $235,000, stating that it would consider this value in its

property division along with the other factors listed in R.C. 3105.18. The trial court, however, made no express determination as to appellee's proportionate share of the pension fund. Apart from the allocation of automobiles, personal property and various bank accounts, the trial court came up with the following division of the parties' marital assets:

| APPELLANT | | APPELLEE | |
|---|---|---|---|
| proceeds from sale of marital residence | 31,025 | proceeds from sale of marital residence | 15,000 |
| IRA in appellant's name | 4,327 | IRA in appellee's name | 15,129 |
| lump sum property settlement | 31,200 | 100% of his retirement benefits | 235,000 |
| 100% of her retirement benefits | 0 | total share of marital assets | $265,129 |
| total share of marital assets | $66,552 | | |

Before we can determine whether or not the trial court abused its discretion in ordering the above division of the parties' marital assets, we must first address the issue raised by appellee as to whether or not the trial court's valuation of appellee's pension plan at $235,000 was proper.

The courts in Ohio are not in complete agreement as to how pension plans should be valued. One approach is to calculate the present value of the future benefits to which an employed spouse is entitled through the use of expert testimony. *Moser v. Moser* (1982), 5 Ohio App.3d 193, 5 OBR 427, 450 N.E.2d 741; *Day, supra.* The reasoning behind the use of this approach is that the accumulated contributions alone represent only a small fraction of the anticipated income. *Day, supra.* Another approach taken by the court in *Blair, supra,* is to value pension rights at the amount of accumulated contributions in the plan. The Blair court reasoned that using the present value of future benefits is unrealistic as that amount cannot be converted presently into cash. *Id.,* 11 Ohio App.3d at 119, 11 OBR at 173, 463 N.E.2d at 424. The court in *Blair* noted however that any future disparity in pension benefits between the parties existing at their retirement age can be adjusted by modifications in the sustenance alimony award if necessary. *Id.*

While we acknowledge that flat rules are not feasible in this area, some guidelines concerning the valuation and allocation of pension rights are necessary. Therefore, we find that where, as here, an employee spouse's

interest in a pension or retirement plan is fully vested and that spouse's retirement, or right to secure benefits is imminent, the appropriate valuation of that property right is the present value of the future benefits to be received. This method of valuation is much more realistic in these circumstances than using only the amount of appellee's accumulated contributions. It would not be reasonable to assume, especially where there is no such evidence, that appellee might quit his job and cash in his retirement for the amount of the accumulated contributions when he is presently entitled to future benefits far exceeding that amount. The present value of future benefits can be readily ascertained with the use of an expert based upon the estimated amount of benefits, the total accumulated contributions, the employee spouse's age and a projected retirement date. Accordingly, the trial court's valuation of appellee's pension fund at $235,000 is supported by evidence in the record and is proper.

■ We must next determine if the trial court's division of the marital assets, including allocation of appellee's pension rights, was equitable or if it constituted an abuse of discretion. Upon reviewing the trial court's division of property in light of the evidence presented at final hearing including the trial court's appropriate valuation of appellee's pension rights at $235,000, while recognizing that the trial court was restricted in its choice of methods for division of appellee's pension rights by *Schrader, supra,* we find the division of the parties' marital assets so unreasonable that it constitutes an abuse of discretion.

■ Appellant also asserts that the trial court erred in not awarding her sustenance alimony. In view of the unreasonable property division ordered by the trial court, we find that it was unreasonable and an abuse of discretion for the court to also deny appellant an award of sustenance alimony.

In light of the foregoing, appellant's assignment of error is found well taken and this cause is remanded to the trial court for redetermination of its property division, taking into consideration this court's recent decision in *Powell, supra,* and the guidelines set forth herein concerning methods of division of pension rights in the context of property division, as well as reconsideration of its decision declining to award appellant sustenance alimony.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas, Domestic Relations Division, is reversed and remanded to said

court for further proceedings not inconsistent with this opinion. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed and cause remanded.*

HANDWORK, P.J., and CONNORS, J., concur.